and we'll hear the first case, Palmer v. Amazon. Ms. Gilbride, I see you're on, and here is Mr. Schwartz. Ms. Gilbride, you can proceed. Good morning, and may it please the Court, Carla Gilbride, on behalf of the plaintiffs. Primary jurisdiction is a narrow abstention doctrine that applies when a court chooses to wait for an agency to issue a pending ruling on a factual or policy matter implicated by a case before it. But the district court opinion here transformed that doctrine into an administrative exhaustion requirement that would prevent any person from seeking relief under state law in state court anytime the subject matter of their claim overlaps with subject matter regulated by OSHA. But in passing the OSH Act, Congress did not intend for OSHA to preempt state common law remedies or to be the sole regulator of health and safety in the workplace. Instead, the OSH Act specifically contemplated a dual enforcement regime, and so the concerns about national uniformity under the auspices of a single regulatory body, such as the Interstate Commerce Commission regulating shipping rates or the FDA regulating drug labels that are at issue in other cases finding primary jurisdiction, are simply not presented here. Therefore, the district court applied that doctrine in a way that expanded its reach and that is not consistent with the factors enunciated by this court in Ellis vs. Tribune television media. In addition to its expansion of the primary jurisdiction doctrine, the district court erred as a matter of law at the motion to dismiss stage by concluding that as a factual matter plaintiffs had not alleged special harm traceable to Amazon-specific conduct. It analyzed the public nuisance claim based on conditions affecting New York City as a whole without looking to the plausible allegations in the complaint that talked about how Amazon's specific conduct exposed the worker plaintiffs and their family members to various types of special injury different in kind, not just in degree, from the injuries suffered by New York residents in general. Can I ask you about that? I understand your argument that Amazon's conduct is what you're complaining of, but the conduct itself is not the injury, right? The public nuisance is the injury in the sense that Amazon's unsafe practices that violated New York's law and the community spread to the community as a whole. That's the public nuisance. Is the injury the adverse consequence that's rendered? Judge Nardini, Judge Nardini, you're breaking up. Is your microphone covered with a piece of paper or anything? No? No, let me try to mute and unmute. Is this any better? No. But we can hear you. I'm generally incoherent anyway, so it's probably no worse than usual. It just sounds like you're gurgling. Let me ask one question slowly, and I apologize. If you can't hear me, I'll maybe log off and log back on. I can hear you, Your Honor. Okay. Isn't the injury the adverse consequence to the plaintiffs, which is either contracting or the risk of contracting COVID, whereas the adverse actions of Amazon are what are increasing, in your view, the likelihood that the injury will occur? So I'm just trying to distinguish, if you would, what, in your view, how is Amazon how are Amazon's actions the injury? How is the nuisance the injury, as opposed to the adverse consequences suffered by the plaintiffs? So Amazon's conduct is what causes the public nuisance that endangers the public health and welfare. The injury to the plaintiffs, there are three specific types of special harm that are pecuniary harm in the sense that the employee plaintiffs, to avoid having to choose between their and their family's health and their livelihood, took unpaid leave at various occasions. They absented themselves from the workplace, then depriving themselves of income. That is a special harm that is different in kind from that experienced by the public as a whole. There's also physical harm. And just to point out that unpaid leave is alleged at page 95 of the Joint Appendix, paragraphs 147 to 148, 97 of the Joint Appendix, paragraph 167 and elsewhere. There's also allegations of physical harm. Specifically, Barbara Chandler alleges a paragraph four of the complaint, page 72 of the Joint Appendix, that she contracted COVID-19 at JFK because of Amazon's unsafe practices, and then spread the disease to others in her family, in her household, including her cousin, who later died. And she found her, her cousin, dead in her bathroom. So that's a physical harm that occurred to her and to her family members, including plaintiff. That kind of physical harm is suffered by other members of the public. So what makes this harm special? Because it is alleged to be due directly to Amazon's conduct. And it cannot be avoided. This is something, again, that the district court sort of conflated saying, well, COVID is everywhere in the community, people encounter it, but not everyone encounters it directly because of Amazon's conduct. And to the extent that you may... It may be obvious, but the public does not go into JFK, right? It's just accessible to employees. That's correct. And so employees are working 10-hour shifts, four to five days a week in these crowded conditions with 3,500 to 5,000 other employees. That's specific harm and exposure that those worker plaintiffs directly experience. And their family members experience the harm derived from the exposure to their cohabitants every day in their homes. Now, other members of the general public may encounter risks of COVID exposure when they go to the grocery store, when they go to public transportation, but they can avoid those things. Before you run out of time, why don't you address the question of the workers compensation law and whether it bars injunctive relief? Absolutely, Your Honor. The workers compensation law, if you look at section 10 of the workers compensation law, it specifically talks about compensation for disability or death from injury. And the district court focused on the word liabilities, but did not look at the context surrounding that word, which talks about liabilities to an employee or, quote, other persons entitled to recover damages, contribution, or indemnity. The statute uses the phrase any other liability whatsoever, which is broad. But it limits those who are able to recover to those entitled to damages, contribution, or indemnity on account of injury or death. It is a backward-looking remedy. And if you look at the legislative history and the constitutional history of the workers compensation laws developed by the National Employment Law Project and NYCOSH brief, it is a trade-off that specifically replaces one greater amount of compensation that would be possible, but that would require proof of fault. It doesn't take remedies off the table entirely, which is what the district court's view would do by taking injunctive relief that the workers compensation board does not have the power to award and say that workers cannot recover that elsewhere in court either. To the extent that the I'm sorry, finish your thought, but then I have a question for you. So I was just going to say that this is an issue of first impression under New York law. No New York court of appeals has weighed in on the question, although there is consensus among other states under similar statutes that injunctive remedies were not intended to be barred. But if this court has any questions about how that matter of state law should be interpreted, we would submit it. It should be certified to the New York Court of Appeals to answer in the first instance. I can reserve the balance of my time for rebuttal, but I believe you had a question, your honor. With Judge Chen's indulgence, if I could ask one more question. And it relates to that same point under labor law 200. Is there a private cause of action for injunctive relief? Um, I, I'm not sure it seems like I wasn't able to find any cases in which that's ever happened before. And I don't know if you can enlighten me. Is that something that the New York courts have spoken to? If we were to decide that, say, we agree with you that the workers compensation law did not have any real effect on how you read 200, would section 200 on its own actually provide you with that forward-looking cause of action for injunctive relief? If you can point this to any precedent one way or the other. Uh, certainly courts have inherent authority to fashion equitable remedies and there's nothing in the text of labor law section 200 that would limit the there isn't a lot of, um, case law on this topic under, under New York, the New York courts have reached. So we would suggest this is also a question that could be certified, but, but to the extent the statute speaks to the issue, um, it does not limit remedies. It is a prophylactic statute. The question is, are you aware, are you aware of any cases either way that have in our brief that talk about, um, responsible parties able to correct the harm. So it's somewhat indirect, but there are state cases that talk about responsible parties who can correct the harm being within the ambit of the statute. And if it was simply backward looking and remedial, uh, I would suggest that, that being in a position to correct the harm is it would not be a germane factor. So there's that indirect precedent, but nothing directly on point your honor. Thank you. We'll hear from Amazon. Just tell me which cases those are just so I can find them easily in the brief or even just the page of the brief. Uh, we discussed the, um, New York labor law section 200 issues. Um, it, um, I believe it's around page 30 to 35 for a brief. I don't have the exact cases in front of me at your side. Thank you. Thank you. Good morning. May it please the court Jason Schwartz on behalf of Amazon. Um, your honors, what I'd like to address each of the, uh, issues that my colleague did, uh, just to frame this, um, this is, uh, about, uh, it's hard to imagine a case that is less suited for judicial, uh, resolution and more suited for the primary jurisdiction doctrine. Uh, and each of the other legal obstacles just highlights how much of a square peg in a round hole the plaintiffs are asking you, uh, to force here. They want the court to fashion from whole cloth, a COVID-19 safety regime that is quote unquote appropriate and quote unquote adequate that the court should decide how many boxes per hour are safe, how long in the bathroom is safe, how much is adequate cleaning time and supplies and so forth. And judge Kogan wisely declined that invitation using the primary jurisdiction doctrine. Let me speak to that first. If I might, your honors, the primary jurisdiction doctrine, uh, is designed for exactly this situation. So if you look at, for example, uh, the Supreme court seminal case in the United States versus Western Pacific railroad, uh, they explained that the doctrine is designed when there are issues under which a regulatory, uh, scheme has been placed within the special competence of an administrative body here, OSHA. It's almost as if the plaintiffs had that exact phrase from the Supreme court in mind. Uh, and from this court in Goya, when they wrote paragraph, how do you respond to the argument that the statute, the OSHA act contemplates, um, um, that the states will get involved? It, it, it says, uh, the act does not prevent any state agency or court from asserting jurisdiction. Understood your honor. And I'll respond to that in two ways. Number one, um, the plaintiffs tell you that this is a federal case at paragraph 22, a 76 in the appendix, they basically repeat the Western Pacific railroad test plaintiff's claims arise under the laws of the United States because the question of whether Amazon's conduct violates state law involves interpreting federal rules and guidance. Those are the plaintiff's own words in their complaint. Number two, your honor, the carve-outs from the OSHA statute are twofold. Uh, first they are for state law tort remedies for generally seeking to recover for injury, not what the plaintiffs are doing here. Again, square peg, round hole. They want to use this state tort statute section 200 to force and regulation by injunction. They're not looking for damages. They're looking for regulation. So then you go to the other carve-out of the OSHA statute, which is in areas governed by OSHA standards. States can only act if they've opted to adopt a OSHA approved and supervised state plan. New York has not done so. So here we're running right into the main of the purpose of the OSHA act and the purpose of the primary jurisdiction doctrine. So can I ask you a question? We're sitting in diversity, right? Uh, well, your honor, they've pled both diversity and federal question jurisdiction. Paragraph 22 of the complaint at a 76 specifically pleads federal question jurisdiction, uh, essentially using the Western Pacific railroad language, your honor. Okay. All right. Well, that's a fair point. Let me hypothesize to you if we are, if we were to determine, and perhaps this is a hypothesis that would not prove true, but to the extent we were sitting in diversity, how might that affect the question of whether it's appropriate to invoke the primary jurisdiction doctrine? And by that, I mean, should our analysis not be whether we think we should, but whether we think in New York court. What? Absolutely understood your point, your honor. Uh, what I would say to that is the Supreme court in this court have said, whenever the questions presented resolve the resolution of issues like here, whether safety protections are quote unquote, adequate or appropriate within the special cognizance of an administrative agency. It doesn't matter whether it's a state law cause of action. In fact, the Supreme court in Nader specifically said, although they didn't apply primary jurisdiction in that case, they specifically said that state common law causes of action are very much subject to the primary jurisdiction doctrine. So just like in a state court, uh, the federal court sitting in diversity, uh, could exercise its discretion as judge Kogan did very sensibly to send these issues, which by the way, with mass and vaccine and everything else, as soon as you issued an injunction, it would be moot on the day after it would be outdated. There's no way for a court to tackle the questions that the plaintiffs have posed. And that's why judge Kogan in the first instance, deferred to the expertise of OSHA, who has adopted guidelines, who has three specific regulations on target, who's been ordered by president Biden and adopted a national emphasis program has now proposed an emergency temporary standard has issued hundreds of, uh, citations. OSHA is very much engaged in this and by the way, as we sit here today, not withstanding the emergency that they claim, the plaintiffs still have not brought a complaint to OSHA. Not only do they not seek emergency relief in the district court and withdrew their injunctive request, but they still haven't knocked on OSHA's door. Uh, so in this instance, all of the Ellis factors would point towards the primary jurisdiction doctrine. Um, your honors, if I might speak to, uh, the special harm requirement of public nuisance, uh, which you also, uh, addressed with my colleague. So the public nuisance cause of action in the main belongs to the sovereign. The New York court of appeals has been clear that there should only be a narrow exception. And this is in five 32 Madison, among other cases that there should only be a narrow exception when the harm is different in kind, not just degree. And here again, this question is answered by the plaintiff's very own complaint. Uh, because if you look at the plaintiff's complaint, what they say is that the harm here is community spread. They provide you with a no limiting factor. And in fact, if you look at paragraphs three 27, three 28, there, there are other allegations as well of special harm. Um, the facility is not open to the public. Um, there's the pecuniary alleged pecuniary harm, which is not shared by the public. Uh, why aren't these your honor? And particularly at the 12th, the 60 understood your honor. Uh, first of all, the complaint itself emphasizes that the harm is to the entire community, all five boroughs of New York, uh, New York state and New Jersey. This is at a one 18. In addition, it's brought on behalf of the family members and cohabitants of the workers with no limiting principle. They suffer the same harm as every other New Yorker, which is on all of those dimensions. And this is just like five 32 Madison, by the way, your honor, there is an economic harm by people who may or may not choose to go to work. There is a physical threat and actual harm by the threat of, uh, uh, COVID-19. All of those are, uh, no different in kind than the threat that is faced by every New Yorker family member, person who rides next to a worker on the bus or the subway. All of this is in the complaint. Your honor, you need look no further than that to determine that they are, they are emphasizing a degree and not a difference in kind, your honor. It in. So if you look at that special harm requirement, it clearly is not met here when in fact they are, they are identifying the same harm that is suffered. Uh, and by the way, uh, if you look at the attorney general, who's filed an amicus brief in this case, they're defending a case brought against the New York state courts by the court officers. And they have argued the very same thing that the court officers who have special access to the courthouse face the same harm as every other New Yorker. And then again, if you look at the face of the complaint, it alleges at, uh, paragraphs, uh, 56, uh, that New York is the global epicenter. And then at paragraphs, uh, uh, 1395 and 327, that the plaintiffs are on public transportation, that they go to the grocery store. And they allege that 51 of the 5,000 employees at paragraphs 86 and 99 had COVID-19 that's 1%, your honor, which a court could take judicial notice is less than half the rate of the community. Why don't you move on to the workers' compensation issue? Absolutely. And there, with respect to workers' compensation, Judge Chin, I think, um, you hit the nail on the head there, which is, uh, that the, uh, statutory language is plain on its face, all other liability whatsoever. And in fact, my colleague said that this was an exchange of remedies. That's absolutely right. The remedy for a worker who has been injured within the scope of the workers' comp system is in it, in exchange for all other liability whatsoever. I pointed out the phrase, any other liability whatsoever, but is that phrase not qualified by the entitled to recover damages language? It is qualified in the sense that that identifies the persons who are barred from any other liability whatsoever. It does not limit the scope of the relief, your honor. And then the title we're talking about workers' compensation. That's what we're talking about. We're not talking about injunctive relief. That's not covered by, that would seem not to be covered by the statute at all. Well, the quit never has to match the pro, the quo, your honor. In other words, the, the, they get the benefit of no fault cash compensation in exchange. They give up any other liability whatsoever in court that doesn't leave them without a remedy. They can go to administrative agencies, which if I might, your honor, one final point on labor law 200, it does speak in plain text to who can seek injunctive relief. The commissioner of labor of New York state is authorized to tag equipment or places that are deemed unsafe. And then if the worksite is not turning off that equipment or barring that place in accordance with the commissioner's order, the attorney general is authorized to seek injunctive relief. That is the only party who can seek injunctive relief under section 200 in accordance with that very clear statutory language, your honors. All right. Thank you. We'll hear the rebuttal. Thank you, your honor. The primary jurisdiction doctrine would apply in certain cases, as the Supreme court mentioned in the Nader versus Allegheny airlines case. If there was an antecedent factual matter within the province of the agency's discretion that needed to be decided as a threshold matter to decide the case. For example, in the Western Pacific railroad case that my colleague mentioned, the question was, are tanks filled with napalm? Do they qualify as incendiary bombs under the interstate commerce act if there's not a fuse attached to them? And because that was a specific tariff decision committed to the discretion of the interstate commerce commission, the court deferred to the primary jurisdiction of that agency. Similarly here, my colleague mentioned specific OSHA standards and there are specific OSHA standards for things like personal protective equipment and respiratory protection. And if something in this case turned on whether under 29 CFR 1910.134 masks qualified as respirators is that term is defined by OSHA, then deferring to OSHA's primary jurisdiction to answer that regulatory question might make sense. But here, just because there are allegations of an unsafe workplace, the sorts of common law public nuisance issues that courts have state courts have handled for decades, and under the New York labor law, how would how would Judge Kogan be able to decide at any given time whether what is whether it's a necessary precaution that you use one mask, or two masks, or what kind of mask whether you should be six feet apart or three feet apart, or whether you should be treated differently if you're over 60 or over 70. All these things are changing over time, they're changing state by state, they're changing relative to schools and theaters, and I don't know what the analog is to a warehouse. How is Judge Kogan to be making these kinds of decisions? Well, that's where the court can look to public health guidance set by the state, such as the New York forward requirements that we point to in the complaint as a standard of care, against which Amazon's conduct can be judged. Did they comply with the with the state requirements for how about open or not the state the court doesn't? How about how about OSHA? Well, to the extent that there are to OSHA, well, to the extent that there are existing guidance documents that the CDC or OSHA or any other agency, but there are promulgated, but that the court doesn't need to wait for OSHA to do something. OSHA has already done something to the extent there's there's helpful guidance that's relevant. The court can consult that where the primary jurisdiction is when the court can reject it. Well, when I don't, I don't agree with OSHA, and I don't agree with the governor, and I don't agree with the, the, the borough president. So, well, again, you know that there are certainly multiple situations where courts deal with scientifically complex material and craft injunctions. And the specific dimensions of the injunction are yet to be determined here. But all that this all that the plaintiffs are asking is that given the ongoing harm that they have suffered due to Amazon's conduct, Kendi and Mesidor did not visit her dying father in the last weeks of his life because of the risk she felt she would expose her family to because of Amazon's conduct. Plaintiff Dasani Bernard was threatened. Counsel, can I ask you a question that your opponent raised? I see the complaint, and I had not noticed this, that you did argue that you invoked both 1331 and 1332 but I didn't see anything in the complaint suggesting federal question jurisdiction aside from your invoking the right to declaratory judgment. Could you just clarify whether, what's the real basis here? Are you invoking both questions in your blue brief? I think I only saw a diversity jurisdiction. That's right, your honor. The federal courts have jurisdiction over this case because of the amount in controversy and because of the diversity of citizenship and our statement about declaratory judgment doesn't, we don't invoke OSHA's jurisdiction, we don't invoke the OSHA Act, there's no federal statutory question that would change that. What's that about? The Declaratory Judgment Act, that we're seeking a declaration that Amazon's conduct falls short of the New York public health guidance and the blueprint established by New York Forward as well as the New York Leave Law requiring that people be paid promptly for their leave when they have to quarantine because of COVID and that didn't happen here. We had Plaintiff Dasani Bernard was taking unpaid leave while waiting for her COVID test results which ultimately came back positive and she received a notice from Amazon threatening her with job abandonment, basically threatening to fire her if she did not come into work even though she had told Amazon she was waiting for the results of her test. You're out of time. Thank you both for your arguments, the court will reserve decision.